ANTHONY MANGINI, as Guardian ad Litem of DEBORAH MANGINI, an Infant, et al., Respondents, v. HOWARD E. McCLURG et al., Appellants.

Third Department, March 15, 1967.

*Simon, Rosch & Brown* (*Alfred L. Simon* of counsel), for Howard E. McClurg and another, appellants.

*Miller & Mannix* (*John W. Miller* of counsel), for John Peroha, Jr., and another, appellants.

*Wein, Greenberg & Canale* (*William V. Canale* of counsel), for respondents.

HERLIHY, J. This is an appeal by the defendants from an order denying a motion for summary judgment dismissing the plaintiff's complaint.

It is essential to state the facts in considerable detail.

The infant plaintiff was injured on February 26, 1963 while riding as a passenger in an automobile which was involved in a two-car collision. She was thrown about, hitting the dashboard and coming to rest on the floor of the vehicle, sitting on the heels of her feet.

She was attended by a physician who apparently treated the injuries somewhat superficially and at the time of the proposed settlement advised the court by affidavit dated June 27, 1963 — more than four months subsequent to the accident — as pertinent to the present issue: "Both knees were lacerated, abrased and swollen. There was pain and tenderness of both arms. There was pain and tenderness of the lumbar spine with the pain radiating down the posterior left thigh. There was also pain and tenderness of the left sacroiliac junction. * * * One month following the accident, the infant's injuries had responded to treatment except for low back pain and *pain in the left posterior thigh*. Because of this persistence of pain the infant was referred to Dr. Philip T. Schlesinger of Glens Falls, New York. I have read Dr. Schlesinger's report following his examination and a course of physiotherapy was commenced. The infant remained under my care for approximately three months and at the time of my last examination she had fully recovered. In my opinion there will be no residual defects, disability, scars or impairment as a result of the injuries suffered in the accident of February 26, 1963. In my opinion there are no permanent defects resulting from the injuries received in that accident." (Emphasis supplied.)

Dr. Schlesinger by letter dated May 10, 1963 — not before the court at the time of settlement — advised the attending physician in part as follows: "About a month ago the patient began to complain of extension of pain into both buttocks and down the back of both posterior thighs into the back of the knees and upper calves. * * * Straight-leg-raising on the left is somewhat restricted, with complaint of pain in the low back and left posterior thigh; on the right it is free and painless. * * * I believe that Miss Mangini has a chronic derangement

of the low lumbar spine, most probably discogenic in origin at the L5-S1 disc. I would advise the application of a Camp Corset and would give this girl a course of physiotherapy in addition. I would like to check her again in about a month." It is to be noted that there was apparently no further examination of the infant by Dr. Schlesinger prior to the settlement.

On June 7, 1963 the infant plaintiff was examined by a physician on behalf of the defendants and his report stated that the plaintiff complained that the left thigh was sore on the outer side, the left hip seemed to catch or click frequently and the lower back bothered on getting out of a chair. He stated that his examination showed that there was a moderate swelling on the outer side of the center of the left thigh. It was fairly hard, and was a resolving, or absorbing, hematoma. It should be noted that this condition as to the thigh was observed by this examining physician subsequent to the examination by Dr. Schlesinger and approximately 20 days prior to the affidavit of the attending physician of June 20. The record disclosed that Dr. Schlesinger took X rays of the back, but no X rays of the hip or thigh were taken until some time subsequent to the settlement.

The infant plaintiff in an affidavit as of June 30, 1964, approximately one year subsequent to the settlement, stated that " the pain, clicking sensation and ' hitch ' were present in the hip from the time of the injury up to and including the time of the compromise of the instant cause of action " and her testimony at the examination before trial corroborates that statement with the additional testimony that prior to the settlement she was limping.

When she personally appeared before the court on the application to approve the settlement it seems evident that neither the infant plaintiff nor her guardian advised the court of this continuous physical disability. The court in approving the settlement was relying upon the affidavit of the attending physician wherein without reference to the complaints as to the thigh, the clicking and limping or the suggestion of Dr. Schlesinger for a re-examination, he unequivocally stated: " In my opinion there are no permanent defects resulting from the injuries received in that accident."

The record is conclusive that as of the date of settlement there was still present an aggravated condition in the hip and thigh. This was nearly four months subsequent to the accident and as the plaintiff stated, was continuously worsening.

The present action to set aside the releases is based upon (a) newly discovered injuries which resulted in a mutual mis-

take of fact, or in the alternative, (b) the releases were secured by fraud and misrepresentation as to a material fact.

We would first dispose of the latter allegation. The attorney representing the plaintiffs at the time of the settlement stated in his affidavit that he had conducted an investigation of the accident and had requested and received medical reports from the attending physician. The record stands undisputed that this attorney contacted the representatives of the defendants, furnished them medical reports and submitted a figure of settlement, which was thereafter accepted subject to court approval. The infant plaintiff in a bill of particulars in the present action has set forth that " at this time [she] is unable to state the circumstances and details of the nature of the fraud and misrepresentation, however, intends to rely upon the proof developed upon the trial of the issues ".

It is our determination that there is no basis in fact or in law which would or could be sufficient to set aside the releases on the grounds of fraud and misrepresentation nor is there any evidence of overreaching or taking of an undue advantage.

Special Term denied summary judgment stating " that neither the plaintiff nor any of her doctors were aware of the injury sustained by the plaintiff ".

The issue on this appeal is whether there was a mistake of fact as to the existence of an injury or a failure to appreciate the possible consequence or sequela of a known injury.

In *Perry* v. *Kingston City Transp. Corp.* (19 A D 2d 202) the result of the injury in an infant's action was scars extending around the leg, and after the settlement, as a consequence of the scars, a new condition developed and this court granted summary judgment to the defendants.

In *Moyer* v. *Scholz* (22 A D 2d 50) the plaintiff sustained an injury which resulted in neck discomfort and the examining doctor found no objective findings. After the settlement a spur developed on the vertebrae and this court affirmed the granting of summary judgment to the defendant.

*LeFrancois* v. *Hobart Coll.* (31 N. Y. S. 2d 200, affd. 262 App. Div. 802, affd. 287 N. Y. 638) cited by respondents as paralleling the present action is misplaced. In that case an insurance adjuster had knowledge of a brain injury which he failed to disclose to the plaintiff prior to the settlement. The court held that the adjuster's tactics were not consistent with an agreement fairly and knowingly made, which is not the basis claimed in the present action.

While each case is factually different, the present situation fits more securely within the framework of *Yehle* v. *New York Cent. R. R. Co.* (267 App. Div. 301, 310–313, affd. 295 N. Y. 874).

In *Viskovich* v. *Walsh-Fuller-Slattery* (16 A D 2d 67) the diagnosis was " multiple bruises and abrasions, both lower legs and back, sacroiliac sprain, bilateral, sprain of right shoulder joint and shock ". The claim was settled for $1,000 and thereafter it was discovered that the plaintiff was suffering from a herniated disc which required surgery. The complaint was dismissed on the ground that the release constituted a complete bar.

In *Flandorfer* v. *Wilford* (25 A D 2d 751) the plaintiff suffered a back injury and thereafter believing that there was no further damage, settled, but it subsequently developed that it was necessary to have spinal fusions. Motion for summary judgment to defendant granted.

These cases are more analogous to the present except that additionally the plaintiffs herein had knowledge that at the time of the court approved settlement there was still some infirmity in the hip which was causing continuous, aggravated discomfort.

While it is true that at the time of the settlement the plaintiff had not been advised medically of the development or the possibility of " avascular necrosis of the left femoral head " and that the doctor who discovered the condition was of the opinion that such condition would not develop for at least six months, Dr. Schlesinger in an affidavit dated April 21, 1966 described the cause and development of the after discovered condition when he stated: " While the tissue in the femoral head died almost immediately after the blood supply was cut off, many months would normally be required for the condition to evidence itself by a separation of the dead bone ", but it seems evident that the pain, clicking, hitching and limping would be objective notice of some physical impairment, not present prior to the accident.

While the record is sufficient to show that some doubt may have existed at the time of the settlement as to the exact nature of the continual aching and the objective symptoms, this record discloses that whether the condition was due to some lumbar back injury or to the subsequent hip injury, there existed at that time known symptoms of continuing discomfort. It would be difficult to argue that if this subsequent condition was related to the back, the plaintiffs would be entitled to set the releases aside and it is our opinion that the fact that some condition later developed in the location of the trouble area was, within the

meaning of the law, a failure to appreciate the possible consequences of the injury in the location of the body where objective and subjective symptoms had continued from the date of the accident. There was no mistake of fact as to the existence of an injury.

Whether the plaintiffs might be entitled to some other relief is an issue not presently before us. It is sufficient to note that the plaintiffs do not disclose the requisites to permit setting aside the releases.

The order should be reversed, on the law and the facts, and summary judgment granted.

GIBSON, P. J., HERLIHY, REYNOLDS, AULISI and STALEY, JR., JJ., concur in opinion per HERLIHY, J.

Order reversed, on the law and the facts, and motion for summary judgment granted, without costs.